Our final case scheduled for argument today is Southern California Rental Housing Association v. County of San Diego. And before we start, my understanding is the appellees have split their time and I guess Mr. Michalowski will go first with 10 minutes and Ms. Joseph with 5 minutes. Is that correct? Correct, Your Honor. Thank you. Thank you. And Mr. Beard, you can proceed whenever you're ready and if you want to reserve time for rebuttal, please watch the clock. Thank you, Your Honors. Can everyone hear me okay? Yes. Thank you. Good morning, Your Honors. And may it please the court, Paul Beard on behalf of Appellant Southern California Rental Housing Association. And I'd like to reserve three minutes of my time for rebuttal and I'll watch the clock. We're asking the court to reverse the district court and instruct it to enter preliminary relief while it considers the merits of the association's claims against the county's eviction moratorium. A motion to dismiss is currently pending before the district court and it appears that the court may be staying its hand until this appeal is resolved. First, I'd like to turn to... What are you asking us to do? You want us to enter some kind of a stay order? No, no. Reverse the district court's denial of preliminary relief and order the district court to enter preliminary injunction pending a review of the merits of the case. What's the district court enjoining that the ordinance has expired? So as we stated in our briefs, there are a number of reasons why we think this controversy is still live or subject to the exceptions under mootness, the mootness doctrine. One of them is that there are continuing effects of the ordinance and we point to a couple of revisions of the ordinance that kind of live beyond the expiration from from August, but I think the easiest... Has anybody been, has any landlord been sued under the cause of action that the ordinance purported to create? Yes, and we included actually in our request for judicial notice an example of a landlord who was sued after the expiration of the ordinance in August, I think August 10th, on the basis of that provision. So the easiest way... Is that lawsuit still, what's the status of that lawsuit? I don't know the status of the lawsuit. That information was brought to us by a landlord who was being sued and so I don't have information about the status of that lawsuit, but the point is that the tenant was able to at least cite to a provision of the ordinance that in effect gives a tenant a cause of action for a landlord's failure to strictly abide by all of the terms of the ordinance while it's alive. And so even if the ordinance expires, as it has in August, causes of action related to potential violations of that ordinance are alive at least until a statute of limitations puts an end to those private causes of action. And if that limitation would be how long? This probably would be a recovery of property, I suspect it would be two years under California statute of limitations. So your argument would be this case can't become moot for at least two years? It's that, but in the alternative and in our view the better way to explain why this case is not moot is to say that yes the ordinance expired as a consequence of the county's own voluntary cessation. And there is case law that says well if the government voluntarily... I thought it was written into the statute. It was. It was a voluntary cessation within 60 days. Yeah. Pardon me. Well I mean it seems to me that this is different from a situation where a defendant ceases activity after it gets sued. Here when the ordinance was enacted it contained its own sunset provision, which was Yes, correct. The ordinance was tied to the lifting of the state stay at home and work from home orders. And so there was no definite date at enactment, but everyone knew that it would expire within 60 days of the state's lifting of those orders. The voluntary cessation doctrine... If I can interject here, I mean can we really decide the mootness issue? As you know, you know the Ninth Circuit en banc case is just recently heard the Brock versus Newsom case and that will probably give us a contours of exactly how we deal with mootness issues in this context. We can't really decide this before the en banc, the mootness issue before the en banc opinion is issued? I think the court could on the basis of the Supreme Court's decision in the Diocese of Brooklyn case that came out last year. The panel opinion in that Brock opinion was considering that and obviously it seems like there's some dispute of how to construe that. So it seems like we're as a panel here, we're handed a little bit tighter. We kind of have to wait and see what the en banc court says how to interpret this case. Yeah, Judge Lee, I don't have a problem with that if the court thinks it needs to wait until the en banc decision comes down in the Brock case, which of course the panel decision reaffirmed that that it's the government's burden to show why it is moot. Our view is that the Diocese of Brooklyn case already provides the panel and hopefully of course the en banc panel, the en banc court with sufficient legal basis for finding or concluding that it's the government's burden. All defendants, whether government or private, have the burden of establishing that a case is moot. I think that's the key point. And the burden is pretty high as your honors probably are aware given that you're aware of the rehearing. And so in this case, under either the voluntary cessation doctrine or the doctrine of capable of repetition and evading review, which I think fits well in this scenario because the county could in theory just keep enacting these short-term self-expiring ordinances and easily escape judicial review without any kind of a decision as to whether it's constitutional. But under either standard, the government would fail. Is there any indication they're going to do that? I would say yes, there are very strong inferences that they will do that. And if I can just briefly list them, number one, the government vigorously defends the constitutionality of its ordinance. Number two, it never has foresworn at any time, including in its brief, the reinstatement of the moratorium. And I guess the most important piece of it is the predicate for the original moratorium last spring, high COVID rates, high hospitalization, high transmission rates. The predicate is even more compelling in the last few then. And the county is hanging its hat on the fact that these exigent circumstances require a moratorium. And so all of these facts together, including the fact that the intervener, a tenants' rights group that promoted and successfully had passed this ordinance, they say at the end of their opposition brief quite openly the court should not enter preliminary relief because it would tie the county's hands in reinstating the moratorium. So I think that side of the issue, the county and the intervener, has made it clear implicitly that there's a reasonable likelihood of this issue resurfacing as we continue to deal with the COVID crisis. And again, the county could simply say, okay, have this case dismissed and then reinstate the moratorium for 60 more days and escape judicial review again. The problem is that the circumstances that gave rise to this particular moratorium are not going to arise. It's not like pregnancy, where it's the same physical phenomenon again and again. The circumstances are going to be different. And so the issues with respect to an injunction are going to be different. Judge Schroeder, I understand your point, but I don't know even that the county or the intervener would agree. In other words, I think they believe that there is a continuing predicate for this, the COVID situation, the housing instability, the fact that a good plurality of the county are these facts they've not denied continue to this day. And that was the very inspiration for that was the sine qua non of that ordinance. And so why if it's the gut, particularly if it's the government's burden, to show that it's absolutely clear this will not arise again. I don't see how the county and intervener get around the mootness problem. This is going to be a similar form. And the association and its members are simply looking for a decision as to whether this violates their constitutional rights. Unless the court has any other questions about the mootness issue, I'd like to just briefly touch on some of the claims. I won't rehash the arguments that we made in our briefs, but very quickly run through the claims on the taking issue. The main argument, the main objection from the county and the intervener seem to be that well, you can't have takings claims for equitable. Did someone ask a question? Sorry, the main objection from the county and intervener is you can't have a taking for equitable relief. And that just doesn't jive with Supreme Court precedent, including the Loretto decision that we cited. But most importantly, the Cedar Point decision that came down also last year, in which the majority and the dissenting opinions recognized that the appellants there, the petitioners were seeking equitable relief to have a state statute struck down under the takings clause. This is not a novelty. And in our view, the county and the intervener and for that matter, the district court doesn't really grapple with the point that takings claims can be made for declaratory and injunctive relief. As to the contracts claim, the big issue, of course, is the apartment association of Los Angeles versus city of Los Angeles decision that came down from this court. Just a couple of thoughts on that decision. Number one, the court there only assumed and didn't decide that the city moratorium impaired contracts. And then it went to the second step of the analysis, of course, and found that it was reasonable and tailored to its purpose. What I would say about that case is this ordinance, the San Diego County Ordinance, is very different from the L.A. City Ordinance, much more burdensome, much more expansive. For example, in the apartment association case, the city of Los Angeles ordinance bars specific kinds of evictions, including no-fault evictions. But this ordinance, the county ordinance, even bars at-fault evictions when a tenant is behaving badly. So the reach is much further than the L.A. City Ordinance and I think on that basis it is distinguishable from the analysis that was made there in the Agla decision. I will eat up a little bit of my rebuttal time just to make a couple remarks about the irreparable harm and the balance of equities issue. The key point here is that the court has time and again said that, and Melendez is a key example of this, that violations of and it's in the public interest to avoid violations of constitutional rights. The main objection from the county intervener is that property rights, economic rights, they should be treated differently. They're a poor relation of the other rights that are enumerated in the Constitution. And in response, I would just point the court again to the Supreme Court's decision in Nick, K-N-I-C-K, which we cite in our briefs. There the court makes it again crystal clear, I your tech takings jurisprudence, that certainly with respect to takings, they are to be treated the same as any other constitutional right. So I think that that goes to the question of irreparable injury because again, if the Association has shown irreparable or a violation of their takings rights, then by definition there has been irreparable injury in the public interest requires that it be preliminarily enjoyed. I will reserve the balance of my time for rebuttal unless the court has any other questions. Thank you. Mr. Michalowski. Good morning, Your Honors. Jeff Michalowski for the County of San Diego. And I think it's really important to keep two kind of overarching points in mind that make this appeal really a lot different than most that I've seen, at least. The first is your point, Judge Tallman, that plaintiff is asking this court to enjoin an ordinance that's no longer in effect. And on top of that, the damages proceedings are still pending in the district court, which will get to the constitutional issues on the merits. So it's a little bit unusual in that respect. The other piece is that the case is a little bit unusual in terms of the standard of review because we're here in denial of a preliminary injunction, which of course imposes a very high burden on plaintiff. This court is to give the district court, in turn, is to give the democratically elected body a lot of deference. So the review here is almost a deference upon deference standard. And applying that lens, there's really a lot of different ways that this court could affirm. And to your question, Judge Lee, there are reasons that it can affirm now without awaiting an en banc decision from the court. Because we have to the law. Brock is vacated by the grant of en banc review. And we of course have chambers, the 2019 unanimous 11 to 0 decision, squarely on point, addressing mootness in the context of a government defendant. But the Supreme Court's diocese case suggests maybe the government has a burden here. And that's the question which is not resolved here, a legal question. And I guess on a factual question, and this is why I think the mootness is, at least for me, relevant, is it'd be one thing if the county had enacted this ordinance in May 2020. It enacted in May 2021, which probably was at the high point of our optimism during this pandemic. At May 2021, vaccines are widely available. We thought they were 90-something percent effective in stopping transmission. The economy was rebounding. There were no variants. There was expectation or maybe hope that almost everyone would get vaccinated. So you're at the absolute high point, and yet the county enacted this ordinance. If anything, I think, as your opposing counsel said, the situation here is, frankly, more difficult now than it was then. So why wouldn't the county perhaps enact it when maybe there's a new variant comes out, or the economy goes south? Those are real possibilities. And again, that's why I think the burden is very important. Who has the burden? If the appellant has a burden, maybe the appellant wouldn't win. But if the county has a burden, I don't know if you'd win. So that's why I think the mootness issue is important here. I understand that, your honor. And I suggest that no matter who bears the burden here, I think we need to look at what evidence is in the record. And then we also have to just look at the reality of the world that we live in. And both of those factors, if you look at those, I think the county prevails no matter who bears the burden. I'll submit on the briefing as to who bears the burden. I note again that the Enbanc decision in Brock is vacated. And I point out that the Supreme Court's decision in Brooklyn Diocese is based on the distinctive facts where the... I'm sorry, was there a question? I'll continue. In Brooklyn Diocese, we were back in the era of color-coded systems where nobody could predict at any time where, based on cases were predicted. So the government would be toggling between heightened restrictions and back down and up again. So Brooklyn Diocese involved a factual situation in which the likelihood of recurrence was very much different than what we're dealing with here. So... Admittedly, it's not the county. We haven't had that in the state. We had in December, if you're vaccinated, you didn't have to wear the mask. We have to wear the mask, apparently. And next week, we don't have to if you're vaccinated. So aren't we in the same... Type of uncertainty? No, Your Honor, not with respect to eviction moratoria because we've now had 11 meetings of the Board of Supervisors since this ordinance expired six months ago in August of 2021. So this ordinance was in effect for 68 days. Now we're 180 days later, and the Board of Supervisors has had every opportunity to take action through any of these 11 board meetings. It never even made the agenda. So there's nothing in the record that suggests that the board is going to be taking further action with respect to an eviction moratorium. And if it did, I think Judge Schroeder's point is really quite important. There's no reason to think that a future ordinance, if it were to occur, would be on substantially the same terms as the previous ordinance, which was tailored to the situation on the mid-2021, we were in a very different world. That was really the infancy of the vaccine rollout. Kids couldn't get vaccinated at that point yet at all. Treatments were not as good, and restrictions were just a lot higher. And I think Plaintiff pointed out in the briefing that when we pass this ordinance, and this goes to the point you raised as well, Judge Lee, that the COVID numbers were, at the time of the briefing, they were looking pretty good. And there was a concern that if things got worse, the county then would take further action and re-implement an ordinance. But we now have a historical experience of six months of the county not taking that action, including through the Omicron surge, which was obviously a very significant event in which cases and hospitalizations dramatically increased. So Plaintiff's argument that the potential for a future worsening of the pandemic, was there a question? No? That argument hasn't played out based on the historical circumstances. We've seen what the county has done in response to really dramatic surges. And the answer is it has not taken any action. It hasn't made the agenda. There hasn't even been any mention of it. Did we take into account the litigation posture in this case to explain the county's inaction? It's obvious it wasn't the agenda. Mr. Beard would immediately come to us and were to the district court and would have said, look, it's on the agenda again. Right. I don't think Plaintiff's made that argument. And I think that we have to look at the fact that we have six months of experience of the county not taking that action. To think that the county's public health response is driven by a single piece of litigation is not, I don't think, a plausible reading of how the county public health officials... Counsel, could the county declare a state of emergency and act a similar ordinance without listing it on an agenda for a future meeting? The question is, could the county implement restrictions of this sort without agendizing it and noticing it? Doesn't the State Emergency Services Act give the county that authority? The State Emergency Act authorizes the county regulation, but we also have the Brown Act and the open meetings laws that require counties to agendize, provide notice, and opportunity for public comment. Even when a state of emergency is declared? This issue's not briefed, and I can't speak with confidence here as to how that would shake out the interplay between those. But I noticed the way that the county did it before. They followed the ordinary process of putting it on the agenda, having people come in for public comment, including Plaintiff. So I have no reason to think that it would be done differently. I thought there was a dust-up among the supervisors over whether or not they should declare emergency enactment of the ordinance, but it failed for one of the majority vote. Yes, your honor. There is a sort of procedural niceties of municipal ordinance making. There's a procedure by which a board of supervisors can enact ordinance on an urgency basis. That means it goes into effect more than one vote. It had three votes, which is a majority, so the board obviously viewed this as quite urgent, but it didn't meet that heightened standard for an urgency ordinance. We'd have different issues anyway, wouldn't we, if they were to do that? I couldn't hear the question, your honor. Could you repeat it? There would be different issues presented anyway, wouldn't there, if there were to be a different moratorium imposed under different circumstances? Surely it would. The county is responsive to current conditions on the ground, and we're in a different world now than we were last year. Unless there are any further questions, I see my time is up. Thank you. Thank you. Good morning. May it please the court, Hallie Josephs on behalf of defendant intervener Ace Action. I want to address some of the points that were raised in prior discussion. First, on the Brock-Bonk pending decision, I do want to note that both in Brock and the Diocese case, as well as the Tandem case that the plaintiff relies on in its briefing, all of those cases involved executive or agency actions. And so I still think that chamber supplies the governing standard for review of legislative actions or expirations as in this case. And so it's not entirely clear to me that the Brock case going on Bonk would have occasion to decide what standards apply to legislative changes. Second, I want to address county inaction. I will just note that there's evidence in the record of substantial rental assistance money that had not been distributed or was in its nascent stages of being distributed at the time that this ordinance was in effect. And since then, there has been substantial additional funds, over $100 million, perhaps even $200 million across the county and the various cities within the county. And so given that the purpose of the ordinance was to keep folks in their homes and to protect public health and safety, the availability of rental assistance could supply the basis for record to assume that this litigation is restraining the board at this time. Third, I do want to respond to the takings points that Mr. Beard mentioned. Neither the Nick case nor the Cedar Point case confirmed that the relief sought by the petitioners there was appropriate. It is true that in both of those cases, just as here and in several other eviction related cases, the petitioners had sought injunctive and or declaratory relief, but the court did not opine on the propriety of that relief. In fact, Justice Breyer in the Cedar Point case in dissent, he noted that the majority did not address remedies. And the sole holding there was that a taking had occurred. The case was then remanded to the Court of Appeals for further proceedings consistent with the opinion. And then I will also note in Nick, the court reaffirmed that when money compensation is available, as no one disputes it is here, injunctive relief is not. And so I think that begins and ends the inquiry there. As for irreparable harm, Judge Tallman, you began your opening question with what is a petitioner asking the court to do here? And one of the key factors in the preliminary injunction analysis is whether irreparable harm will be likely in the absence of an injunction, not merely possible. And that's winter. I mean, that standard is not reasonably in dispute. And because the ordinance has long since expired, there's no prospect of it being renewed or reinstated in some other form based on different circumstances. There's no evidence in record of any harm that plaintiff's members are suffering to this day. I think that plaintiff has pointed in its briefing. What about this lawsuit? Counsel, what about this lawsuit that's supposedly pending against one or more landlords? For two reasons, we don't think that suffices. First, that particular lawsuit was defective because I believe the unlawful detainer action or the injunction action had been instituted before the notice to vacate had expired. So there were other defects in the lawsuit. So I don't think that example suffices to explain that there would be irreparable harm. And second, I believe that money damages would be sufficient in the event of that sort of constitutional or in the event of that sort of violation. And so there's no doubt that plaintiff raises in its briefing is the idea that the notices of termination of tenancy that were served during the 68-day period the ordinance was in place were invalid. But the harm that's being complained of there, the inability to use those notices to later evict someone, that's the very definition of irreparable harm. Because for the past six months since the ordinance expired, plaintiff's members have been free to serve new notices and evict tenants if they have a basis to do so. I see my time is up. If there are no further questions, I will submit. Thank you. Mr. Beard? Thank you, Judge Lee. I'll just make a couple of points in response. Number one, the county says that it hasn't for six months agendized a new moratorium. I'll note first that any adoption, I'm not aware of any law that allows any municipality to adopt an ordinance even on an emergency basis without public notice and public hearing. I think that's a Brown Act requirement. But more to the point, to the county's point, if the county is so certain that it won't reenact this, even this moratorium, then why wouldn't it simply stipulate to a from reinstating it while this case makes its way up the courts? It's never offered to do so. Again, it's never denied that it will do so. And it's vigorously defended its law. What case do you rely on for the proposition that we can or should enter a mandatory injunction that precludes the county from adopting an ordinance like the one that is now expired? First, I would take slight issue with the phrasing. I think this would be a prohibitory injunction prohibiting the county from taking certain action. Yeah, okay. But the effect is to say you are enjoined from reinstating this status quo ex ante. Yes. I don't know that there's a specific case regarding ordinances that I can think of off the top of my head. I mean, principally, we're relying on the general principle affirmed in the in the Diocese of Brooklyn case that that courts are free to preliminarily enjoin alleged misconduct or a repeat of alleged misconduct pending the airing of the Diocese of Brooklyn case. Now, this distinction between types of government actors, whether it's the executive or an agency or a legislature, I have not seen any case that draws that kind of a distinction. The government is the government. A city I can't I can't think of a single case where a court has enjoined a legislature from doing something in the future that may arguably be unconstitutional when it's later reviewed in court. Well, to be clear, we are frankly, your request makes me very nervous because I'm not sure I have that authority. We do cite authority, and I wish I had it at my fingertips, as they always tell you in our briefing to the effect that municipal legislative bodies are a little bit different from state legislatures. And I think I take your honor's point with respect to some kind of an injunction that would say prevent the California legislature from doing from enacting a law, say, I think that might be a tougher sell. But with respect, but I can't think of a case where where we've ever addressed that issue or the Supreme Court has addressed the issue. Happy to do supplemental. You're basically asking us to issue injunctive relief against some action. We don't know exactly what it will look like that resembles what it did when it enacted this ordinance, which is now expired. Well, I think it would be an injunction prohibiting the reinstatement of the moratorium at a minimum. So it would be a reinstatement of the moratorium. It would be a don't do that again. Prohibit right. I mean, you could. We have seen district court decisions, but you can't talk about something similar, but not off the top of my head. No. OK. No. And I apologize. All right. Thank you. I think that's all I have. Unless the court has any questions, we would simply request that the court reverse its preliminary the decision below denying preliminary relief and instruct the court to enter preliminary injunction. Thank you all for the very helpful argument that the case has been submitted. Thank you. Thank you.
judges: SCHROEDER, TALLMAN, LEE